# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

**United States ex rel. Elizabeth D. Holt**,
*Relator-Appellant,*

**v.**

**Medicare Medicaid Advisors, Inc.; Carefree Solutions USA Inc.;
Carefree Insurance, Inc.; Aetna Incorporated; Humana, Inc.;
UnitedHealthcare Insurance Company**,
*Defendants-Appellees.*

On Appeal from the United States District Court for the Western District of Missouri
The Honorable David Gregory Kays, District Judge
Case No. 4:18-cv-00860-DGK

## BRIEF OF DEFENDANTS-APPELLEES MEDICARE MEDICAID ADVISORS, INC. AND CAREFREE SOLUTIONS USA INC. N/K/A MEDICARE MEDICAID ADVISORS USA, INC.

Dated: December 8, 2023

Jessica M. Andrade (WSBA #39297)
1000 Second Avenue, Suite 3500
Seattle, WA 98104
Telephone: (206) 393-5400
Facsimile: (206) 393-5401
jessica.andrade@polsinelli.com

**Polsinelli PC**

E. Benton Keatley (MO #69868)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
ebkeatley@polsinelli.com

*Attorneys for Medicare Medicaid
Advisors, Inc. and Carefree Solutions
USA Inc. n/k/a Medicare Medicaid
Advisors USA, Inc.*

91841548.9

## SUMMARY OF THE CASE

This is a False Claims Act ("**FCA**") case without a false claim at all, let alone a material one. Relator-Appellant Elizabeth Holt failed to plead the who, what, when, where, or how of any alleged misrepresentation by MMA. Applying well-settled pleading standards, the district court correctly dismissed Holt's claims against MMA because, even in her third pleading over four years, Holt failed to plead the requisite elements that MMA[1] (i) presented or caused presentment of a false claim for payment, and (ii) MMA made misrepresentations material to government payment decisions. The court likewise properly denied as futile Holt's one-sentence request, made only in a brief, for leave to amend and file a fourth complaint.

This Court should affirm without oral argument for those same reasons, and others apparent on the face of her pleading under this Court's settled law.

If any argument is allotted to Holt, MMA requests equal time.

---

[1] Appellees Medicare Medicaid Advisors, Inc. and Carefree Solutions USA Inc. n/k/a Medicare Medicaid Advisors USA, Inc. refer to themselves collectively herein as "**MMA**."

i

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, MMA states that Medicare Medicaid Advisors, Inc. has no parent companies and there is no company or corporation that owns ten percent or more of its stock, and that Carefree Solutions USA Inc. n/k/a Medicare Medicaid Advisors USA, Inc. has no parent companies and there is no company or corporation that owns ten percent or more of its stock.

Appellate Case: 23-2564    Page: 3    Date Filed: 12/08/2023 Entry ID: 5342827

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE ................................................................ i

CORPORATE DISCLOSURE STATEMENT ........................................ ii

COUNTERSTATEMENT OF THE CASE ...........................................1

SUMMARY OF THE ARGUMENT .................................................9

COUNTERSTATEMENT OF STANDARD OF REVIEW ..................10

ARGUMENT ..............................................................................11

I. Legal Standards .................................................................11

    A. The False Claims Act ....................................................11

    B. Standards For Pleading FCA Violations .........................13

    C. The Relevant Regulatory And Sub-Regulatory Guidance ..............14

        1. Rules And Guidance On Marketing Practices .........................14

        2. Rules and Guidance On Agent Training and Testing ..............15

II. Holt Did Not Plead Her Meritless Fraudulent Inducement Theory Below Or Preserve For Review Her Arguments To Add Such A Theory ....................16

    A. The SAC Entirely Fails To Plead A Fraudulent Inducement Theory .16

    B. Alternatively, The Court Should Not Consider Holt's Fraudulent Inducement Theory, Because It Was Not Pled Below, And Is Not Properly Raised Here ............................................................19

III. Misrepresenting Compliance With Medicare Marketing or Agent-Certification Requirements Is Not "Material" Under the FCA ....................22

    A. The *Escobar* Factors: What It Takes For A Requirement to Be "Material" Under The FCA ................................................................23

Appellate Case: 23-2564     Page: 4     Date Filed: 12/08/2023 Entry ID: 5342827

1.    An Alleged And Unidentified Condition of Eligibility Is Not A Condition Of Payment ...............................................................25

2.    Holt Alleged Nothing About How The Government Responds To Non-Compliance ..........................................................................27

3.    Neither Agent-Testing Nor Marketing Requirements Go To The "Essence Of The Bargain" Of Medicare Advantage ...............31

B.    The District Court Did Not Reversibly Err By Observing That The Government Had Declined To Intervene .............................................33

C.    Amicus's Additional Arguments On Materiality Are Meritless, Have Been Waived, And Are Inconsistent With Holt's Allegations ..........34

D.    Holt Has Abandoned Any Argument For Reversing Dismissal Of Counts IV and V ................................................................................37

IV.   The District Court Correctly Determined That Holt Failed To Plead That MMA Presented Or Caused Presentment Of A False Claim ........................38

A.    Holt Did Not Plead Any Examples Of MMA Presenting Or Causing Presentment Of Any False Claim.........................................................38

B.    Holt Did Not Plead Particular Details Of A Scheme To Submit False Claims, With Reliable Indicia That Claims Were Submitted .............41

C.    An Indirect Presentment Theory Requires Alleging Presentment Of A False Request Or Demand For Money, Which Holt Has Not Done...45

D.    Amicus Incorrectly Presumes That The District Court Erroneously Relied Upon Pre-Amendment Statutory Text.....................................47

V.    Additional Bases For Affirming Dismissal ....................................................50

A.    Holt Failed To Plead That MMA Proximately Caused Anything ......50

B.    Holt Failed To Plead MMA's Scienter ...............................................51

VI.   Holt Gives No Reason To Reverse The Denial Of Her One-Sentence Request To Amend Her Presentment-Based Claims.....................................52

Appellate Case: 23-2564    Page: 5    Date Filed: 12/08/2023 Entry ID: 5342827

CONCLUSION ......................................................................................53

INDEX OF CMS MARKETING GUIDELINES....................................................54

CERTIFICATE OF COMPLIANCE..........................................................55

CERTIFICATE OF SERVICE ...............................................................56

Appellate Case: 23-2564     Page: 6     Date Filed: 12/08/2023 Entry ID: 5342827

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 .......................................46

*In re 2007 Novastar Fin. Inc., Sec. Litig.*,
    579 F.3d 878 (8th Cir. 2009) .............................................................21

*United States ex rel. Ambrosecchia v. Paddock Labs., LLC*,
    855 F.3d 949 (8th Cir. 2017) ............................................20, 21, 23, 53

*In re Baycol Prod. Litig.*,
    732 F.3d 869 (8th Cir. 2013) .......................................................12, 18

*United States ex rel. Benaissa v. Trinity Health*,
    963 F.3d 733 (8th Cir. 2020) ......................................................39, 42, 48

*United States ex. rel. Brooks v. Stevens-Henager Coll.*,
    305 F. Supp. 3d 1279 (D. Utah 2018).................................................22

*Christensen v. Qwest Pension Plan*,
    462 F.3d 913 (8th Cir. 2006) .........................................................9, 19

*Christiansen v. W. Branch Cmty. Sch. Dist.*,
    674 F.3d 927 (8th Cir. 2012) ...........................................................50

*United States ex rel. Cimino v. IBM Corp*,
    3 F.4th 412 (D.C. Cir. 2021)....................................................12, 18, 19

*United States ex rel. Druding v. Care Alternatives*,
    81 F.4th 361 (3d Cir. 2023) ...........................................27, 31, 32, 37

*U.S. ex rel. Dunn v. N. Mem'l Health Care*,
    739 F.3d 417 (8th Cir. 2014) ...........................................................34

*United States ex rel. Foreman v. AECOM*,
    19 F.4th 85 (2d Cir. 2021) ...............................................................31

*Freitas v. Wells Fargo Home Mortg., Inc.*,
    703 F.3d 436 (8th Cir. 2013) ...........................................................37

Appellate Case: 23-2564   Page: 7   Date Filed: 12/08/2023 Entry ID: 5342827

*United States ex rel. Garbe v. Kmart Corp.*,
   824 F.3d 632 (7th Cir. 2016) ...........................................35, 36, 50, 51

*Ginsburg v. InBev NV/SA*,
   623 F.3d 1229 (8th Cir. 2010) ...............................................21

*United States ex rel. Hendow v. Univ. of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ...........................................27, 37

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
   441 F.3d 552 (8th Cir. 2006) ................................ 13-14, 43

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ...........................................................29, 37

*United States ex rel. Kraemer v. United Dairies, L.L.P.*,
   82 F.4th 595 (8th Cir. 2023) ...........................................34, 48

*Martin v. Safe Haven Sec. Servs., Inc.*,
   2020 WL 13538608 (W.D. Mo. May 14, 2020)................................21

*United States ex rel. Miller v. Weston Educ., Inc.*,
   840 F.3d 494 (8th Cir. 2016) .......................................*passim*

*United States ex rel. Modglin v. DJO Glob. Inc.*,
   114 F. Supp. 3d 993 (C.D. Cal. 2015) (9th Cir. 2017) ......................51

*United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*,
   865 F.3d 29 (1st Cir. 2017).............................................13, 36

*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*,
   688 F.3d 410 (8th Cir. 2012) ...........................................29, 30

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) ...............................................21

*United States ex rel. Petratos v. Genentech, Inc.*,
   855 F.3d 481 (3d Cir. 2017) .............................................12, 35

*United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*,
   892 F.3d 822 (6th Cir. 2018) .......................................27, 37

vii

*Rivera v. Bank of Am., N.A.*,
993 F.3d 1046 (8th Cir. 2021) ....................................................... 36-37

*Ruckh v. Salus Rehab., LLC*,
963 F.3d 1089 (11th Cir. 2020) ..........................................................13

*United States ex rel. Schutte v. SuperValu Inc.*,
598 U.S. 739 (2023)...........................................................................51

*Sentis Group, Inc. v. Shell Oil Co.*,
559 F.3d 888 (8th Cir. 2009) ..............................................................21

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
472 F.3d 702 (10th Cir. 2006) ............................................................13

*Solis v. Summit Contractors, Inc.*,
558 F.3d 815 (8th Cir. 2009) ..............................................................29

*United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*,
915 F.3d 1158 (8th Cir. 2019) .......................................40, 41, 42, 47

*United States ex rel. Taylor v. Boyko*,
39 F.4th 177 (4th Cir. 2022) ..............................................22, 34, 44

*United States ex rel. Thayer v. Planned Parenthood of the Heartland*,
765 F.3d 914 (8th Cir. 2014) ......................................................38, 43

*United States ex rel. Thayer v. Planned Parenthood of the Heartland, Inc.*,
11 F.4th 934 (8th Cir. 2021) ...............................................................13

*Thayer v. Planned Parenthood of the Heartland*,
No. 4:11-CV-129-JAJ, 2019 WL 13039126 (S.D. Iowa Apr. 1, 2019) ...................................................................................................24

*United States v. Hodge*,
933 F.3d 468 (5th Cir. 2019) ..............................................................12

*United States v. Molina Healthcare of Ill., Inc.*,
17 F.4th 732 (7th Cir. 2021) ...............................................................13

*United States v. Quicken Loans Inc.*,
239 F. Supp. 3d 1014 (E.D. Mich. 2017) ..................................... 12-13

Appellate Case: 23-2564     Page: 9     Date Filed: 12/08/2023 Entry ID: 5342827

*United States v. Strock*,
 982 F.3d 51 (2d Cir. 2020) .......................................................*passim*

*Univ. Health Servs., Inc. v. United States ex rel. Escobar*,
 579 U.S. 176 (2016)...............................................................*passim*

*United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*,
 34 F.4th 507 (6th Cir. 2022) ...................................................37

*U.S. ex rel. Vigil v. Nelnet, Inc.*,
 639 F.3d 791 (8th Cir. 2011) ...........................................28, 29, 30

*United States ex rel. Wilkins v. United Health Group, Inc.*,
 659 F.3d 295 (3d Cir. 2011) .......................................11, 28, 29, 30

**Statutes**

31 U.S.C. § 3729(a)(1) (1986) ......................................................3, 38

31 U.S.C. § 3729(a)(1)(A) ...........................................................*passim*

31 U.S.C. § 3729(a)(1)(B) .........................................28, 35, 46, 47

31 U.S.C. § 3729(b)(2)...................................................................39

31 U.S.C. § 3729(b)(4)...................................................................24

42 U.S.C. § 1395w–21(h)(4)..........................................................14

42 U.S.C. § 1395w–21(j)(1)(A).....................................................14

**Regulations**

42 C.F.R. § 422.254 .......................................................................46

42 C.F.R. § 422.256 .......................................................................46

42 C.F.R. § 422.2264 .....................................................................15

42 C.F.R. § 422.2264(a)(1) ....................................................... 14-15

42 C.F.R. § 422.2264(a)(2) ...........................................................14

42 C.F.R. § 422.2264(a)(3) ...........................................................14

Appellate Case: 23-2564     Page: 10     Date Filed: 12/08/2023 Entry ID: 5342827

42 C.F.R. § 422.2264(c) ........................................................15

42 C.F.R. § 422.2264(c)(3) ...................................................15

42 C.F.R. § 422.2274(b)(2) (effective Mar. 22, 2021) ...................................... 15-16

42 C.F.R. § 422.2274(c) ........................................................30

42 C.F.R. § 422.2274(c)(4) ...................................................15

42 C.F.R. § 422.2274(d) .......................................................46

42 C.F.R. § 422.2274(d)(1) (effective Mar. 22, 2021) ...........................................15

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................13, 40, 42, 45

**Other Authorities**

Brief of United States as Amicus Curiae in Support of Neither Party,
*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-
5*, No. 11-3302, 2012 WL 403493, at *21 (filed Jan. 27, 2012) ........................30

CMS, CY 2019 Medicare Communications and Marketing Guidelines
(Sept. 5, 2018).....................................................................14, 16

CMS, CY 2018 Medicare Communications and Marketing Guidelines
(July 20, 2017) ...................................................................16

CMS CY 2017 Medicare Communications and Marketing Guidelines
(June 10, 2016)....................................................................15

CMS, CY 2016 Medicare Communications and Marketing Guidelines
(July 2, 2015) ....................................................................15

CMS, CY 2015 Medicare Communications and Marketing Guidelines
(June 17, 2014)....................................................................16

CMS, CY 2014 Medicare Communications and Marketing Guidelines
(June 28, 2013)....................................................................15

Appellate Case: 23-2564   Page: 11   Date Filed: 12/08/2023 Entry ID: 5342827

## COUNTERSTATEMENT OF THE CASE

**Holt's Allegations Concerning MMA**

MMA markets Medicare Advantage Plans ("**MAPs**") that are sold by Medicare Advantage Organizations ("**MAOs**") like the Carrier Defendants here. App. 27; R. Doc. 27 at 6 (Second Amended Complaint ("**SAC**") ¶ 20-22).[2]

In the SAC, which Holt filed about three years after she began this action,[3] Holt alleged MMA[4] misconduct from its creation in 2006 through Holt's filing of the SAC, in October 2021. App. 40; R. Doc. 27 at 19 (SAC ¶ 91-94). Holt was an MMA agent for only a little over a year, from September 2015 through December 2016. App. 26; R. Doc. 27 at 5 (SAC ¶ 17).

Holt alleged that MMA did not comply with rules or guidance that prohibited the following alleged practices or tactics:

(a) marketing practices, which Holt alleged to be

    (i) soliciting potential applicants improperly, through cold-calling, door-knocking, creating pretextual "lead" cards to justify a sales

---

[2] Unless otherwise noted, all capitalized terms are as defined in Relator-Appellant Holt's brief.

[3] *See* App. 7-8 (docket sheet).

[4] Holt pled her allegations against both MMA entities, collectively. App. 23, 27; R. Doc. 27 at 2, 6 (SAC ¶ 22).

Appellate Case: 23-2564    Page: 12    Date Filed: 12/08/2023 Entry ID: 5342827

call, and using misleading sales tactics in communicating with beneficiaries;[5]

    (ii)    "churning" commissions by encouraging or demanding that agents switch beneficiaries from one plan to another, and regardless of whether it is in the beneficiaries' best interests;[6]

(b) failing to train agents on compliance with applicable rules and testing agents' compliance in an environment in which MMA executives were available to review and correct the agents' answers.[7]

Holt alleged several examples of MMA agents submitting Medicare Advantage Plan ("**MAP**") applications for enrollment. App. 66-72; R. Doc. 27 at 45-51 (SAC ¶ 217). Holt stated that each application "resulted in false claims on the government," but did not plead that these or other specific applications were obtained by an MMA agent (i) who had not been properly tested or certified, or (ii) through one or more allegedly unlawful marketing practices. *See generally* App. 22-85; R. Doc. 27.

---

[5] App. 49-62; R. Doc. 27 at 28-41 (SAC ¶¶ 138-91).

[6] App. 62-65; R. Doc. 27 at 41-44 (SAC ¶¶ 192-202, 212-14).

[7] App. 41-44; R. Doc. 27 at 20-23 (SAC ¶¶ 103-20).

    In Counts IV and V, Holt alleged that MMA directed agents to falsely state that unnamed beneficiaries were eligible for enrollment during a special election period ("**SEP**"). App. 85-89, 100-03; R. Doc. 27 at 64-68, 79-82 (SAC ¶¶ 286-306, 377-401). Holt does not raise those allegations in her brief.

Appellate Case: 23-2564    Page: 13    Date Filed: 12/08/2023    Entry ID: 5342827

Holt alleged: "Each and every commission . . . paid to MMA based on sales of MAPs that occurred as a result of its agents' violations of CMS regulations would not have been paid if CMS knew about MMA's violations of CMS regulations." App. 48; R. Doc. 27 at 27 (SAC ¶ 134). Holt did not plead that she had access to or knowledge of MMA's billing practices, that she personally requested or received commission payments for MMA, or that she otherwise was familiar with whether, when, or how commissions were paid by the Carrier Defendants for specific applications obtained or submitted as a result of MMA allegedly violating one of the above practices. *See generally* App. 22-85; R. Doc. 27.

Holt alleged that, through submitting enrollment applications, MMA knowingly or recklessly presented or caused presentment of false claims to the United States for the payment of commissions, in violation of 31 U.S.C. § 3729(a)(1)(A) (2009) and its predecessor, formerly codified at 31 U.S.C. § 3729(a)(1) (1986). App. 95-96, 100-03; R. Doc. 27 at 74-75, 100-03 (SAC ¶¶ 340-53, 377-401).

Holt pled that MMA's noncompliance with the alleged requirements described above was material to government decisions to pay, and did not plead that MMA's noncompliance was material to any Carrier Defendants' decisions.[8]

---

[8] App. 39; R. Doc. 27 at 18 (SAC ¶ 88 ("MMA's violations of CMS regulations were material to the government's decision to authorize payment . . . .")), *id.* (SAC ¶ 89 (alleging that "CMS would never have authorized [commission payments] to MMA"

Appellate Case: 23-2564     Page: 14     Date Filed: 12/08/2023 Entry ID: 5342827

According to Holt, the Carrier Defendants continued to use MMA after she notified them of MMA's alleged misconduct. App. 77-85; R. Doc. 27 at 56-64 (SAC ¶¶ 243-285).

Holt did not allege that:

(a) MMA expressly or implicitly made a misrepresentation that induced the government to execute a contract (whether with MMA or a Carrier Defendant);

(b) MMA expressly or implicitly made a misrepresentation that induced a Carrier Defendant to execute a contract either with MMA or with a Carrier Defendant;

(c) a Carrier Defendant expressly or implicitly made a misrepresentation that induced the government to execute a contract; and/or

(d) any Defendant induced the government to execute a contract.

*See generally* App. 22-85; R. Doc. 27.

---

if it knew of alleged violations of certification or sale regulations); App. 73, 96; R. Doc. 27 at 62, 75 (SAC ¶¶ 219-20, 347, 351 (all similar)); App. 101; R. Doc. 27 at 80 (SAC ¶ 385 (alleging CMS would not have approved commissions on Extra Help applications for enrollment of unqualified individuals)); App. 102; R. Doc. 27 at 81 (SAC ¶ 398 (similar, as to CMS commission payments for allegedly unqualified individuals for MORx)).

4

**MMA's Motion to Dismiss**

All defendants including MMA moved to dismiss Holt's claims for failure to state a claim and for failure to plead the circumstances of fraud with particularity, as required by Rules 12(b)(6) and 9(b). MMA argued that Relator had not alleged the who, what, when, where, or how of MMA's alleged fraud, because among other things, Holt had not pled how any MMA agent obtained an enrollment application in violation of any marketing or SEP requirements, and Holt had not alleged that any individual agent was improperly certified. App. 227-243; R. Doc. 77 at 9-25.

MMA explained that several of the alleged requirements changed (or did not exist) during the 15-year period at issue, and that while Holt's failure to plead the date of any improper application made it difficult to assess materiality under the FCA, no alleged requirement was material to any government payment decision. App. 222-27, 232, 238-42; R. Doc. 77 at 4-9, 14, 20-24.

MMA further urged dismissal for Holt's failure to allege facts showing that MMA presented or caused presentment of a false claim, or that it did so knowingly, arguing that the SAC was premised on a misunderstanding of the applicable rules and processes rather than on well-pled facts regarding MMA's conduct. App. 228-238, 242-43; R. Doc. 77 at 10-20, 24-25.

Holt argued in opposition that MMA's alleged misrepresentations were material to government payment decisions,[9] and that MMA had presented or caused presentment of false claims because MMA submitted applications for enrollment and CMS pays Medicare Advantage organizations like the Carrier Defendants based on bids that include amounts to be paid as commissions. App. 292-93; R. Doc. 84 at 12-13. Holt also argued, for the first time, that MMA was liable on a fraudulent inducement theory of FCA liability. *Id.*

In the last line of her brief, Holt stated: "Alternatively, Relator requests leave to amend the pleading to address any Court concerns." App. 302; R. Doc. 84 at 22. Holt did not submit a proposed Third Amended Complaint or describe its proposed contents, nor did she move for leave to amend.

MMA replied that Holt had not pled a fraudulent inducement theory at all, and could not identify any contract fraudulently induced by MMA. App. 396, 401-02; R. Doc. 94 at 2, 7-8.

---

[9] *See* App. 299; R. Doc. 84 at 19 (Holt Opp. to MMA Mot. to Dismiss: "A reasonable person would consider MMA's systematic contravention of CMS's protections to be material to CMS's authorization of payments to MMA."); App. 342; R. Doc. 86 at 12 (Holt Opp. to UHC Mot. to Dismiss: "[I]f the government had actual knowledge of these activities, it is reasonable to assume they would have been material to its decision to pay."). Holt did not discuss materiality in her brief supporting reconsideration, but addressed the issue on reply (after Defendants raised it as a defect), arguing that Defendants' misrepresentations were material to government payment decisions. *See generally* App. 431-439; R. Doc. 104 (Holt Br. in Supp. of Recon.); App. 455-56; R. Doc. 105 at 8-10 (Defts. Opp. to Mot. for Recon.); App. 465; R. Doc. 106 at 4 (Holt Reply in Supp. of Mot. for Recon.).

6

**The District Court's Order Dismissing All Claims**

The district court granted MMA's motion and each Carrier Defendant's motion. App. 410-26; R. Doc. 101. Dismissing all claims, the court agreed that Holt had failed to plead materiality, failed to do so with particularity, and that she failed to allege presentment of any claims because her theory of presentment of a claim to the United States—that a MAP application is a request for a commission payment— was wrong under applicable law. App. 419-25; R. Doc. 101 at 10-16. The Court denied Holt's alternative request to amend, and dismissed her claims with prejudice, "because further attempts at amendment would be futile" given the defects in her "third attempt at pleading her claims" in a case that was almost "four years-old." App. 425; R. Doc. 101 at 16.

The court declined to rule on MMA and other defendants' additional arguments for dismissal, including that Holt failed to plead knowing submission of a false claim, but the court noted that those additional arguments "appear to have merit." App. 426; R. Doc. 101 at 17.

**Holt's Motion For Reconsideration**

Invoking Rule 59(e), Holt moved the court to reconsider dismissal, arguing that she had pled that MMA had accessed the Medicare Advantage program through fraudulent inducement and could therefore be liable under the FCA for any claim submitted thereafter, and that the court had failed to acknowledge or discuss that

7

theory. App. 432-38; R. Doc. 104 at 2-8. In her conclusion, Holt added: "Alternatively, if the Court believes the SAC's allegations do not clearly point to this theory, Relator requests leave to amend the pleading to address the Court's concerns." App. 438-39: R. Doc. 104 at 8-9.

**The District Court's Order Denying Reconsideration**

The court denied Holt's motion, explaining that "Relator never pled the claim she now advances; the Complaint simply contains no fraudulent inducement claim" and "[a]llegations that are not included in the operative complaint cannot be considered on a motion to dismiss." App. 471; R. Doc. 109 at 3. The court further noted that the word "induce" appears only in Paragraph 361 of the SAC, in a reference that did not assert a fraudulent inducement theory of liability. *Id.* n.3.

Appellate Case: 23-2564    Page: 19    Date Filed: 12/08/2023 Entry ID: 5342827

# SUMMARY OF THE ARGUMENT

The district court addressed and correctly dismissed the implied certification theory for FCA liability that Holt pled below and largely abandons here. Holt blurs distinctions between that theory and the fraudulent inducement theory that she did not plead but now advances, and neither theory has merit.

Holt has not pled the who, what, when, where, or how of any alleged fraud by MMA or any other defendant—whether in the inducement of a contract, or in the presentment of a claim to the government. Holt runs headlong through these hurdles and declares that every commission MMA has ever earned, apparently over a fifteen-year period, *must have been* obtained by fraud, because of vaguely suggested misrepresentations of compliance with marketing or training rules or guidance. As this Court repeatedly has held, such bald allegations do not meet the heightened pleading requirements that apply here, and indeed do not allege sufficient facts to make Holt's claims plausible.

Alternatively, Holt asks the Court to reverse the denial of her threadbare request for leave to amend and permit her to file a *fourth* complaint that she never submitted below and has never described to date.

Several of Holt's arguments and those of amicus have been waived, and none warrant reversal.

9

## COUNTERSTATEMENT OF STANDARD OF REVIEW

MMA agrees with Holt that this Court reviews de novo the district court's rulings in its dismissal order that Holt failed to plead elements of FCA violations plausibly or with particularity, and its determination that any amendment would be futile.

Although Holt does not present an issue specific to the order denying her Rule 59(e) motion, review of any such issue would be for a clear abuse of discretion. *See Christensen v. Qwest Pension Plan*, 462 F.3d 913, 920 (8th Cir. 2006) ("A district court has broad discretion in determining whether to grant a motion to alter or amend judgment, and this court will not reverse absent a clear abuse of discretion.").

10

## ARGUMENT

## I.    Legal Standards

### A.    The False Claims Act

Holt blurs distinctions that this Court recognizes between two different theories of FCA liability: implied false certification[10] and fraudulent inducement. MMA clarifies the standards that apply to these theories, in turn.

An implied false certification theory of liability, under 31 U.S.C. § 3729(a)(1)(A), requires pleading:

> first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

*Univ. Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 190 (2016). Although the SAC is not well-pled, each count identified Section 3729(a)(1)(A) and its predecessor as the provision(s) violated, and alleged presentment of false claims to the United States as the only basis for MMA's liability.

---

[10] Implied false certification is one of two ways to allege "legally false" claims. Holt has never argued that she express false certification, nor could she: there are no allegations that MMA expressly misrepresented compliance with any rule or requirement. *United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) (explaining types of certification-based FCA claims), *abrogated in part on other grounds as stated in United States ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh, Pa.*, 728 F. App'x 101, 106 (3d Cir. 2018). Holt has also never argued that any alleged MMA claim was *factually* false. *See id.*

A fraudulent inducement theory requires pleading that: "(1) the defendant made a false record or statement; (2) the defendant knew the statement was false; (3) the statement was material; and (4) the defendant made a 'claim' for the government to pay money or forfeit money due." *United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 500 (8th Cir. 2016) (additional quotation marks omitted). When addressing such a theory, this Court "examines the false statements that induced the government to enter the contract," rather than the claims for payment ultimately submitted under that contract. *Id.* at 504; *accord In re Baycol Prod. Litig.*, 732 F.3d 869, 876 (8th Cir. 2013).

No matter the theory, "[t]he False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 194 (quotation marks and citations omitted).

This Court does not appear to have decided the issue, but other circuits that have done so have held that an alleged FCA violation must actually and proximately cause a government payment (or inducement of a government contract) to trigger liability.[11]

---

[11] *See United States ex rel. Cimino v. IBM Corp*, 3 F.4th 412, 420-21 (D.C. Cir. 2021) (explaining that an inducement theory of FCA liability derives from the common law of fraud and thus requires actual and proximate causation); *United States ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 491 (3d Cir. 2017) (noting that mere but-for causation is insufficient and that proximate cause is required for FCA liability); *United States v. Hodge*, 933 F.3d 468, 475 (5th Cir. 2019) ("We agree proximate cause is required."); *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d

12

## B.  Standards For Pleading FCA Violations

"Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)." *United States ex rel. Thayer v. Planned Parenthood of the Heartland, Inc.*, 11 F.4th 934, 939 (8th Cir. 2021) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)) ("*Thayer II*").

> Under the heightened particularity standards of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts. The relator must state when the acts occurred, who engaged in them, and what was obtained as a result.

*Id.* (citations and quotation marks omitted).

Rule 9(b)'s heightened pleading requirement is especially important in an FCA case brought by a relator (like Holt), who "may be particularly likely to file

---

1014, 1041 (E.D. Mich. 2017) ("It appears as though the Sixth Circuit has endorsed (at least implicitly) the . . . proximate causation standard for damages under the False Claims Act.") (citing cases); *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 740 (7th Cir. 2021) ("The plaintiff also must prove that the violation proximately caused the alleged injury."); *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019); *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1106-07 (11th Cir. 2020) (holding that proximate causation is the standard for liability for causing false claims to be presented); *cf. United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29, 35 (1st Cir. 2017) (describing requirement of proximate causation without endorsing it explicitly).

Appellate Case: 23-2564     Page: 24     Date Filed: 12/08/2023 Entry ID: 5342827

suit as a pretext to uncover unknown wrongs" or use "baseless allegations" to "extract settlements." *Joshi*, 441 F.3d at 559 (quotation marks omitted).

### C.    The Relevant Regulatory And Sub-Regulatory Guidance

Holt bases her claims on MMA and the Carrier Defendants allegedly violating and/or falsely representing compliance with CMS rules or guidance. Holt misunderstands or mischaracterizes those rules and guidance, which MMA clarifies.

### 1.    Rules And Guidance On Marketing Practices

CMS permits unsolicited direct contact of Medicare Advantage beneficiaries through mail, other print media, and email. *See* 42 C.F.R. § 422.2264(a)(1); CMS, CY 2019 Medicare Communications and Marketing Guidelines § 40.2 (Sept. 5, 2018).[12] Prohibited, unsolicited direct contact includes door-to-door solicitation or any outbound telemarketing, *unless* the prospective enrollee initiates contact. *See* 42 U.S.C. § 1395w–21(h)(4), (j)(1)(A); 42 C.F.R. § 422.2264(a)(1)-(2). Returning a "business reply card requesting contact" is one way that a prospect can initiate contact, and such cards need not be signed before an agent can contact the prospect, as Holt pled. *See* 42 C.F.R. § 422.2264(a)(3); CY 2019 Marketing Guidelines § 40.3; App. 51-52; R. Doc. 27 at 30-31 (SAC ¶ 149).

---

[12] References to CMS's annual Medicare Communications and Marketing Guidelines are referred to hereinafter as "**Marketing Guidelines**," noted by applicable contract year ("**CY**").

Agents may hold personal marketing appointments face-to-face or virtually, and before doing so, the agent must agree upon and record the Scope of Appointment ("**SOA**") with beneficiaries. *See* 42 C.F.R. § 422.2264(c), (c)(3). But a signed SOA is not required at all, let alone 48 hours in advance of the appointment, as Holt pled. *Compare* 42 C.F.R. § 422.2264, *with* App. 52; R. Doc. 27 at 31 (SAC ¶ 151). The SOA can be in writing or recorded orally by "[a]ny technology." CY 2018 Marketing Guidelines § 70.4.3.

## 2. Rules and Guidance On Agent Training and Testing

MAOs like the Carrier Defendants are required to ensure that agents selling Medicare products are (i) annually trained on Medicare rules and regulations and details specific to the plan products they intend to sell and (ii) annually tested. *See* 42 C.F.R. § 422.2274(c)(4). CMS rules did not state that agent-testing and training were prerequisites to compensate agents until March 2021[13]—two and a half years after Holt filed her first complaint, on October 29, 2018. App. 7 (docket sheet). Before March 2021, CMS had offered inconsistent, sub-regulatory guidance on whether testing and training were prerequisites.[14]

---

[13] *Id.* § 422.2274(b)(2), (d)(1) (effective Mar. 22, 2021). The first iteration of Section 422.2274 was effective September 18, 2008 to November 13, 2008. From that version through the present, there have been eleven versions of Section 422.2274. The first version to include language tying brokers' payments to testing or training became effective March 22, 2021.

[14] *Compare* CY 2017 Marketing Guidelines §§ 120.3–120.4.4 (June 10, 2016) (no specification that training and testing are required to compensate), CY 2016 Marketing Guidelines §§ 120.3–120.4.6 (July 2, 2015) (same), *and* CY 2014 Marketing Guidelines §§ 120.3–120.4.7 (June 28, 2013) (same), *with* CMS, CY

15

Holt alleged that agents cannot be compensated unless they maintain a passing score of 85 percent on their annual tests, but that requirement was also not included in any rule until March 2021. *See* 42 C.F.R. § 422.2274(b)(2) (effective Mar. 22, 2021). Before then, there was only sub-regulatory guidance that MAOs "ensure the integrity of their training and testing program to include that all agents and brokers are tested independently."[15] CMS has never clarified what it means to be "tested independently," and it is unclear when this guidance came into effect.

## II. Holt Did Not Plead Her Meritless Fraudulent Inducement Theory Below Or Preserve For Review Her Arguments To Add Such A Theory

### A. The SAC Entirely Fails To Plead A Fraudulent Inducement Theory

Holt invokes *Miller*'s four-element test for fraudulent inducement, but ignores *Miller*'s explanation of how those elements are applied: the Court "examines the false statements that induced the government to enter the contract." *Miller*, 840 F.3d at 504. It is not enough to simply declare that (i) MMA violated regulations or sub-regulatory guidance in a way that could put the Carrier Defendants in breach of a

---

2019 Marketing Guidelines § 110.4 (Sept. 5, 2018) (describing training and testing as prerequisite to compensation), CY 2018 Marketing Guidelines § 120.4.1 (July 2, 2017) (same), *and* CY 2015 Marketing Guidelines § 120.4.1 (June 17, 2014) (same). An index containing links to the cited Marketing Guidelines is included at the end of this brief.

[15] *See* CMS, Agent Broker Training and Testing Guidelines at 1 (2018), https://www.cms.gov/Medicare/Health-Plans/ManagedCareMarketing/Downloads/2019-Agent-Broker-Training-Guidelines_Revised-082018.pdf Complete access to prior versions of this guidance appears unavailable.

Appellate Case: 23-2564     Page: 27     Date Filed: 12/08/2023 Entry ID: 5342827

contract with CMS, or that (ii) MMA or any other defendant made a knowingly false statement somewhere, and that MMA or another defendant was later paid something. Nor is it enough to (correctly) note that in a fraudulent inducement case, a court would ask "whether the Defendants' fraud materially influence[d] the government's decision to enter into contracts with the Defendants." Br. at 43.

Rather, Holt must plead with particularity facts that show MMA fraudulently induced a government[16] contract—through knowingly false statements material to the government's decision to enter a contract—and later submitted claims under that contract. *See Miller* 840 F.3d at 500; *United States v. Strock*, 982 F.3d 51, 60-61 (2d Cir. 2020). Holt pled no such facts in the SAC and does not argue otherwise here. Instead, Holt cites allegations only of what MAOs are required to certify generally, without pointing to any (nonexistent) allegations concerning any defendant's application or negotiation for, or execution of, any particular contract. *See* Br. at 16, 28-30, 47 (citing SAC ¶¶ 14, 70, 81, 102, 108-117, 141-43, 193-98, 237, 257, 274-76, 327-31, 375).[17]

---

[16] Holt does not argue on appeal that MMA fraudulently induced any contract between MMA and a Carrier Defendant, nor did she so plead in the SAC.

[17] Holt's failure to plead facts regarding any defendant's contracting processes is not surprising, as she was an MMA agent from September 2015 to December 2016 and does not and cannot allege any knowledge of those processes—either directly or indirectly. App. 26; R. Doc. at 5 (SAC ¶ 17).

17

Holt nonetheless declares that her SAC "was based *primarily* on the theory that the government would never have entered into contracts with the defendant[s] if the government had known about the defendant[s'] fraud," without pointing to any allegations to support that argument. Br. at 24 (emphasis added). But how did Holt allege that MMA (or any other Defendant) caused the government to execute a contract? Holt does not and cannot say how she meets this basic element of any fraudulent inducement case.

*Baycol* shows what it takes to plead fraudulent inducement. In that case, this Court reversed dismissal of an inducement-based claim, because the relator had identified "the who, what, where, when and how" of the alleged fraud and connected those allegations to the government's contracting decision, by pleading: (i) the parties to defendant-government communications regarding the government's concern about a drug's safety; (ii) defendant's alleged misrepresentations about the drug; (iii) when and how those misrepresentations were made; and (iv) the specific reasons why the representations were fraudulent when made. *See* 732 F.3d at 876-77.[18]

_____

[18] *See also Cimino*, 3 F.4th at 418-19 ("Because the fraud must be in the inducement, liability under the FCA for fraudulent inducement must turn on whether the fraud caused the government to contract.").

Holt relies on *Miller*, which arose on a summary judgment posture and in any event does not help Holt, because the relator had adduced specific evidence from which a jury could conclude that the defendant, at the time it executed a specific

No remotely comparable facts were pled here; Holt has not plausibly or with particularity alleged facts showing how MMA (or any other defendant), through knowingly false statements material to the contracting decision, induced the government to contract. *See id*.; *Cimino*, 3 F.4th at 420.[19]

To the extent Holt attempted to assert an inducement theory of liability in the SAC, the district court correctly dismissed it, and this Court should affirm.

### B. Alternatively, The Court Should Not Consider Holt's Fraudulent Inducement Theory, Because It Was Not Pled Below, And Is Not Properly Raised Here

"[Holt] never pled the claim she now advances; the Complaint simply contains no fraudulent inducement claim. And allegations that are not included in the operative complaint cannot be considered on a motion to dismiss." App. 471; R. Doc. 109 at 3 (citing *Glick v. W. Power Sports*, *Inc.*, 944 F.3d 714, 717 (8th Cir. 2019)). Holt does not ask for review of that ruling in the order denying her motion for reconsideration, and plainly does not argue that it was a clear abuse of discretion, which is required for reversal. *See Christensen*, 462 F.3d at 920 (stating standard of review of such motions); *see* Br. at 2-3 (presenting issues for review).

---

government contract, had no intent to comply with a specific promise that it made to the government. *See* 840 F.3d at 500-01. Holt pled no analogous facts here.

[19] *See also Miller*, 840 F.3d at 504 (explaining that materiality in a fraudulent inducement case focuses on how false statements induced the government to contract).

Appellate Case: 23-2564     Page: 30     Date Filed: 12/08/2023 Entry ID: 5342827

And Holt only *conditionally* appeals the court's denial of her request for leave to amend,[20] arguing that she should be permitted to fix the deficiencies in her third complaint (five years since the filing of her first complaint) "[i]f [this] Court agrees with the district court that some aspect of the fraudulent inducement claim was inadequately pleaded, *but also agrees with Relator Holt that the alleged violations were plausibly material*." Br. at 50 (emphasis added). Holt thus concedes that any proposed amendment is futile unless she first convinces the Court that her *existing* pleading plausibly and with particularity pled materiality, and it did not for the reasons stated in Part III below.

Regardless of whether any argument specific to adding a fraudulent inducement theory is properly before the Court, the Court should affirm the denial of leave to amend to plead one, both because a fraudulent inducement theory would be futile,[21] and because Holt has *never* submitted her proposed Third Amended Complaint as required. *See* W.D. Mo. L.R. 15.1(a) (requiring submission of draft amendment). What facts would Holt plead or amend to state fraudulent inducement with particularity? Holt does not say. Below, Holt merely asked for leave to amend "to address any Court concerns," in one sentence at the end of each opposition brief

---

[20] *See* Br. at 3, 49-50.

[21] Holt's theory would not survive a motion to dismiss, if based on the allegations in the SAC, Part II.A *supra*, and Holt has never identified the facts that she would plead to overcome this deficiency. *See Ambrosecchia*, 855 F.3d at 956.

and in support of reconsideration.[22]  Such threadbare requests for leave are insufficient.  *See United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 956 (8th Cir. 2017) (holding court did not abuse discretion by denying amendment where relator did not propose substance of amendment but made "a one line request in her brief opposing defendants' motion to dismiss") (cleaned up); *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884 (8th Cir. 2009) (similar).[23]

None of Holt's authorities states otherwise. MMA agrees with Holt's irrelevant statement that dismissal with prejudice is a "draconian" or "extreme" *sanction* for misconduct, as noted in the *Sentis Group* and *Martin* decisions cited by Holt.[24] Br. at 49. The court did not sanction Holt for misconduct, but denied a fourth bite at the apple, which was well within its discretion to do.[25]  And the fact that another district court, in another case, dismissed different FCA claims without

---

[22] App. 302; R. Doc. 84 at 22; App. 274; R. Doc. 83 at 25; App. 324; R. Doc. 85 at 17; App. 348; R. 86 at 18; App. 438-39; R. Doc. 104 at 8-9.

[23] *Accord Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 519 (8th Cir. 2018) (noting failure to include proposed amendment supported denial of leave to amend); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1236 (8th Cir. 2010) ("Plaintiffs never submitted a proposed amended complaint nor explained what amendments would be made, which is reason enough to uphold the denial.").

[24] *See Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 891, 901 (8th Cir. 2009) (describing dismissal with prejudice as "draconian sanction" for discovery abuses and other abuses of process); *Martin v. Safe Haven Sec. Servs., Inc.*, 2020 WL 13538608, at *2 (W.D. Mo. May 14, 2020) (addressing dismissal with prejudice under Rules 37 and 41(b), for violating discovery and other orders).

[25] MMA does not dispute that the Court reviews futility questions de novo.

Appellate Case: 23-2564     Page: 32     Date Filed: 12/08/2023 Entry ID: 5342827

prejudice[26] in no way shows that the district court reversibly erred in dismissing Holt's claims with prejudice.

## III. Misrepresenting Compliance With Medicare Marketing or Agent-Certification Requirements Is Not "Material" Under the FCA

This Court should affirm because Holt pled no facts against MMA that would favor a finding of materiality, on any factor, and Holt plainly failed to do so with the requisite particularity.[27]

Holt's failure to plead what MMA misrepresented or violated and when is both a cause and symptom of her failure to plead materiality with particularity. Holt alleged a fifteen-year period of MMA's noncompliance with a litany of marketing and agent-testing rules, sub-regulatory guidance, and/or suggestions that changed throughout that period and at times did not even exist. It is impossible to plead plausibly or with particularity that MMA's compliance was material to a given government decision without identifying when compliance was required in the first place, and when and how MMA failed to comply.

---

[26] *See United States ex. rel. Brooks v. Stevens-Henager Coll.*, 305 F. Supp. 3d 1279, 1306-07, 1311 (D. Utah 2018).

[27] *See Escobar*, 579 U.S. at 195 n.6 ("[P]laintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."); *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 190 (4th Cir. 2022) (same).

But that is how Holt chose to plead, and how she argues for reversal: without identifying particulars as to any misrepresentation of compliance, and by describing the requirements themselves only in broad, categorical terms as marketing or certification (agent-testing) requirements. Holt declares that these requirements are material, without identifying or discussing them in any specific or systematic way. Nowhere in her argument does Holt identify what the requirements even are; how they arose; when or how MMA allegedly violated them or falsely represented compliance (and to whom it did so); or any facts indicating how CMS responds to non-compliance. Instead, Holt simply declares in sweeping terms, with no support from well-pled facts, what CMS would have done—allegations that should not be credited as true. *See Ambrosecchia*, 855 F.3d at 955 (stating there is no obligation to accept a pleading's labels and conclusions as true).

The district court correctly concluded that Holt failed to plead materiality plausibly or with particularity, and this Court should affirm.

### A.    The *Escobar* Factors:  What It Takes For A Requirement to Be "Material" Under The FCA

"The False Claims Act is not an all-purpose antifraud statute" and does not make actionable every allegedly false statement of compliance with any alleged government regulation, guidance, or contract. *Escobar*, 579 U.S. at 194 (quotation marks omitted).  Rather, the FCA imposes the "demanding" requirement that a misrepresentation "must be material to the Government's payment decision in order

23

to be actionable." *Id.* at 192, 94. Misrepresentations are not material "merely because the government calls for compliance with a particular statutory, regulatory, or contractual requirement." *Thayer v. Planned Parenthood of the Heartland*, No. 4:11-CV-129-JAJ, 2019 WL 13039126, at *17 (S.D. Iowa Apr. 1, 2019), *aff'd sub nom. Thayer II.*

Defining materiality under Section 3729(a)(1)(A), the Supreme Court has endorsed both the statutory definition, "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property,"[28] and common law ones, noting that each definition considers how the misrepresentation affects the recipient's behavior. *Escobar*, 579 U.S. at 193.

*Escobar* provides non-dispositive factors for assessing whether misrepresenting compliance with a requirement is material to a government payment decision, including: (i) whether the government has "expressly identified a provision as a condition of payment"; (ii) "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular . . . requirement" or, conversely, that the government pays claims despite actual knowledge of non-compliance; and (iii) whether the alleged compliance is minor or insubstantial or instead "goes to the very

---

[28] 31 U.S.C. § 3729(b)(4).

Appellate Case: 23-2564    Page: 35    Date Filed: 12/08/2023 Entry ID: 5342827

essence of the bargain."  579 U.S. at 193-95 & n.5 (parenthetically quoting *Junius Constr. Co. v. Cohen*, 178 N.E. 672, 674 (N.Y. 1931)) (cleaned up).

### 1.    An Alleged And Unidentified Condition of Eligibility Is Not A Condition Of Payment

Whatever the marketing or agent-specific requirements are that Holt claims to be material, Holt does not attempt to claim they are express conditions of payment, so the first *Escobar* factor weighs in MMA's favor.  *See* Br. at 44-48.

Holt attacks *Escobar*'s first factor rather than arguing it as written by the Supreme Court, as she claims the district court "took an extremely narrow view" by "stating the Medicare regulations do not expressly make compliance a condition of payment." Br. at 44.  That is another way of saying the district court applied *Escobar* correctly when it noted that none of the requirements expressly conditions payment upon compliance.  Br. at 44.[29]

Holt does not claim that MMA misrepresented compliance with an eligibility condition, or that MMA made a misrepresentation of compliance material to a Carrier Defendant's eligibility decision.  *See* Br. at 44 (claiming only that

---

[29] Holt claims that the court's "narrow" view ignores "the clear purpose of requiring MA organizations"—not MMA—"to certify that they will follow the rules to participate in the program." *Id.* at 44-45.  Holt then argues that the purpose of (unspecified) "regulations requiring proper certification is evident from MMA's conduct," an odd and unsupported view of regulatory interpretation. *Id.* at 45, n.8.

Were Holt correct, then a certification of compliance with *any* government eligibility requirement would necessarily favor materiality on *Escobar*'s first factor.

25

"compliance with Medicare regulations was a clearly stated condition for *the Carrier Defendants* to become MA Organizations") (emphasis added). Holt's argument that the court should have focused on whether the Carrier Defendants' misrepresented compliance with a "condition of eligibility" thus does not help her against MMA, on the first *Escobar* factor. *Id.* at 45 (quoting *Strock*, 982 F.3d at 62).

Regardless, Holt's invocation of the Second Circuit's decision in *Strock* collapses with her failure to plead the fraudulent inducement of any contract, by any defendant (as discussed above). In *Strock*, the court explained that in fraudulent inducement cases, the "payment decision" for materiality purposes includes "both [the government's] decision to award a contract and its ultimate decision to pay under that contract." 982 F.3d at 62. There, the government alleged that it had conditioned the award of contracts to a service-disabled veteran-owned small business ("SDVOSB") on that business's certification that it was majority-owned and operationally controlled by one or more service-disabled veterans. *Id.* at 57-58 (citing statutes and regulations specifying SDVOSB conditions of contract eligibility), 61-62 (applying *Escobar*'s first factor). Put differently, there were credible allegations, derived from clear statutory and regulatory text, showing that the government had conditioned the award of the contracts on SDVOSB status, and would never have awarded them to a company that falsely represented its status as an SDVOSB. No remotely analogous eligibility conditions apply to MMA.

Holt cites *Prather* and *Care Alternatives*, and both are inapposite, because compliance with the regulation at issue in each case was an express condition of payment. *See United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 832-33 (6th Cir. 2018); *United States ex rel. Druding v. Care Alternatives*, 81 F.4th 361, 369 (3d Cir. 2023). And *Hendow*, also cited by Holt, is a pre-*Escobar* decision, concerning in part a fraudulent inducement theory. *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006). In *Hendow* the government had triple-conditioned funding on compliance by statute, regulation, and contract "with . . . the precise requirement that relators allege that the [defendant] knowingly disregarded." *Id.* at 1175-76.[30]

There are no similar conditions imposed by any requirement that Holt invokes here, so the first factor weighs against materiality.

### 2.     Holt Alleged Nothing About How The Government Responds To Non-Compliance

Holt argues that how the government responds to non-compliance is a "neutral" factor here, because CMS recoupment of payments for noncompliance would be relevant, but not dispositive. Br. at 46. Holt attacks a straw man; the

---

[30] Holt invokes *Miller* as an on-point decision throughout her brief, but not on the first *Escobar* factor. Like *Hendow*, *Miller* concerned compliance with a "triple conditioned" record-keeping requirement—one incorporated into the governing statute, regulation, and contract binding the defendant. *See* 840 F.3d at 504. Further, the requirement was explicitly stated as "necessary to ensure proper and efficient administration of funds," and a "reasonable person would attach importance to a promise to do what is necessary to ensure funds go where they are supposed to go." *Id.* (quotation marks omitted).

27

district court did not give dispositive weight on materiality (or even on this *Escobar* factor) to her failure to allege that CMS recoups payments for noncompliance.[31]

The court determined that the second *Escobar* factor weighed against materiality for two reasons. *First*, it correctly noted that Holt "does not identify an instance of CMS recouping payments for noncompliance with marketing regulations." App. 422; R. Doc. 101 at 13. *Second*, citing this Court's decision in *Vigil*[32] and the Third Circuit's in *Wilkins*, the court reviewed relevant CMS regulations and determined that the options available for remedying non-compliance "suggests CMS would not seek to recoup payments or refuse to pay claims for marketing violations," and that holding any alleged violations were material to CMS payment decisions would "short-circuit the remedial process the Government established to address non-compliance." *Id.* at 422-23; R. Doc. 101 at 13-14 (quotation marks omitted).

Holt does not challenge the court's construction of CMS regulations, or how it relied upon them in applying *Escobar*. Amicus the United States does in part, but this Court does not generally consider arguments raised only by amici and should

---

[31] Nor did the court hold that "the absence of allegations about government action" indicates that "the government does not care about MA Organizations ignoring rules that they have promised to follow," Br. at 46, as Holt suggests in yet another argument that is not directed at MMA.

[32] *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791 (8th Cir. 2011), *superseded on other grounds by statute*, 31 U.S.C. § 3729(a)(1)(B) (2009).

Appellate Case: 23-2564     Page: 39     Date Filed: 12/08/2023 Entry ID: 5342827

not do so here.[33]  Regardless, amicus is flatly wrong to declare that the court's discussion of *Vigil* on materiality "cannot be squared" with *Onnen* on the grounds that this Court has "rejected the proposition that 'a complex regime of regulatory sanctions *precludes* the Attorney General'—or a relator—'from suing under the FCA.'" Amicus Br. at 16-17 (quoting *United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 415 (8th Cir. 2012)).  Amicus mischaracterizes the district court's holding below and this Court's reasoning in *Onnen*:

> [N]one of [*Vigil*, *Wilkins*, and other cited] cases has held that a complex regime of regulatory sanctions *precludes* the Attorney General from suing under the FCA <u>when the government has been damaged by a</u> **<u>materially</u>** <u>false or fraudulent claim for payment or by use of a record</u> <u>or statement in a</u> **<u>materially</u>** <u>false claim.</u>

688 F.3d at 415 (8th Cir. 2012) (italics in original, other emphasis added). As the underlined language omitted by amicus suggests, the error corrected in *Onnen* was relying on a complex regulatory sanctions regime to *preclude* FCA liability altogether—not whether or how such a regime weighs on materiality.  Indeed, *Onnen* explains that the line quoted from *Vigil* by the district court, and criticized by amicus

---

[33] *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 n.4 (1991) (declining consideration of SEC's argument as amicus, because "we do not ordinarily address issues raised only by *amici*"); *Solis v. Summit Contrs., Inc.*, 558 F.3d 815, 826 n.6 (8th Cir. 2009) (declining to consider argument that "may have some merit . . . because it was raised to this court by the amici and not by the parties").

29

here,[34] addresses "whether *materially* false or fraudulent claims had been presented to the government," and *Onnen* left that reasoning undisturbed. 688 F.3d at 414. Notably, the United States itself had urged, as amicus in *Onnen*: "This Court was correct in *Vigil* that a regulatory scheme may be 'significant' in determining whether a plaintiff has made allegations about conduct that is material to the government's decision to provide funding."[35] That is precisely how the district court applied *Vigil*; it did not err.

The district court also cited *Wilkins* for a very similar proposition: that allegedly false implied certifications of compliance with Medicare marketing requirements were not actionable under the FCA, in part because the government had created administrative remedies for correcting violations of those regulations short of withholding payment. App. 423; R. Doc. 101 at 14 (citing 659 F.3d at 310-11). Similarly, here, CMS's delegation of oversight of agents like MMA to MAOs, not the government,[36] can be taken to support a finding of immateriality. Neither Holt nor amicus disputes the district court's correct application of *Wilkins*.

---

[34] Amicus Br. at 16 ("The court indicated that allowing an FCA claim to proceed would 'undermine the government's own regulatory procedures . . .'" (citing App. 423; R. Doc. 101, at 14 (quoting *Vigil*, 639 F.3d at 799))).

[35] Br. of United States as Amicus Curiae in Support of Neither Party, *United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, No. 11-3302, 2012 WL 403493, at *21 (filed Jan. 27, 2012).

[36] 42 C.F.R. § 422.2274(c).

Appellate Case: 23-2564     Page: 41     Date Filed: 12/08/2023 Entry ID: 5342827

### 3.      Neither Agent-Testing Nor Marketing Requirements Go To The "Essence Of The Bargain" Of Medicare Advantage

Holt claims the third *Escobar* factor "weighs heavily for materiality" by broadly declaring the existence of rampant violations of agent-certification and marketing requirements.  Br. at 46.  Holt misunderstands this factor, which asks whether violations are "minor and insubstantial" or "go to the essence" of the bargain.  *Escobar*, 579 U.S. at 193 n.5.  Alleging some greater number of violations is neither necessary nor sufficient—the violation (or series thereof) must go to the core of a government contract or requirement.  *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 116 (2d Cir. 2021) ("This factor looks at the 'contracts' purpose' and whether 'the defendants' noncompliance deprived the government of [the] intended benefits' of the contract." (quoting *Strock*, 982 F.3d at 65)).

Holt does not and cannot explain how any alleged marketing or agent-testing requirements are central to Medicare Advantage, nor does her argument discuss any contract or other requirements that bound MMA.  *Strock* and *Care Alternatives* are thus again inapposite, this time on *Escobar*'s third factor.  *Strock* concerned well-pled allegations that defendants induced the government to contract by misrepresenting their SDVOSB status, and that status was at the "very heart of the SDVOSB statutory and regulatory regime," which established "goals" for increasing contracting opportunities for those specific businesses.  982 F.3d at 65.

31

The documentation rule addressed in *Care Alternatives* concerned a "foundational" part of the Medicare hospice program because it ensures that a physician's determination of hospice eligibility is supported, and in turn that funds go only to those patients who need it. 81 F.4th at 371 (quotation marks omitted). The court's discussion of the severity of the defendant's failures to document patients' need for hospice care does not stand for the proposition that a violation becomes substantial under *Escobar* merely because of the frequency with which it is repeated, as Holt suggests. *See* Br. at 48. Rather, the court emphasized that the defendant understood the importance of documenting and supporting patients' need for hospice care, and how the defendant nonetheless committed "violations [that] went to [that] 'essence of the bargain,'" because evidence in the record showed that in 35% of the records reviewed by an expert, the patient's need for hospice care was either not supported or contradicted. *See* 81 F.4th at 368, 372-73. By contrast, Holt did not allege that a single MMA agent, directly or indirectly, caused CMS to enroll a single person who was ineligible for Medicare Advantage.[37]

Nor did she allege a single MMA agent who was improperly certified, or a single enrollment application that MMA obtained through violating any marketing rule or guidance, even as she declares that (i) every agent *must have* been improperly

---

[37] Holt has abandoned Counts IV and V, which are the only ones in which she suggested that MMA enrolled ineligible, unidentified persons.

Appellate Case: 23-2564     Page: 43     Date Filed: 12/08/2023 Entry ID: 5342827

certified, and (ii) every enrollment application MMA *must have* been obtained through violating marketing rules or by fraudulently certified MMA agents.

\* \* \*

At bottom, Holt's theory of materiality—whether in the inducement of an unidentified contract and/or the government's decision to pay an unidentified claim—is the sweeping and unsupported allegation that the government would never have paid any defendant if it knew that MMA had violated marketing or agent-testing or training requirements.

The Supreme Court rejected similar allegations in *Escobar* as "extraordinarily expansive" and insufficient to plead materiality, and this Court should reject them here and affirm. 579 U.S. at 195-96; *cf. Strock*, 982 F.3d at 64 (rejecting government's allegations of "what [it] 'would have' done had it learned of the non-compliance" as "inherently self-serving and unverifiable claims that alone cannot be sufficient to demonstrate materiality").

## B. The District Court Did Not Reversibly Err By Observing That The Government Had Declined To Intervene

Both Holt and amicus urge reversal in part by claiming the district court placed undue weight on the government's decision not to intervene in this case. *See* Br. at 46; Amicus Br. at 19-20. The district court merely listed the intervention decision in a footnote among several *additional* facts that "bolstered" the conclusion

33

it had reached in the text: that Holt had not alleged violations that go to the essence of the Medicare Advantage bargain. App. 423-24; R. Doc. 101 at 14-15 & n.7.

Even if that footnote states an error (and it is not clear that it does[38]), the Court should not reverse dismissal on materiality grounds, because Holt's failure to plead materiality is fatal without giving any weight to the government's non-intervention. *See U.S. ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 419 (8th Cir. 2014) (court may affirm dismissal on any basis supported by the record); *Boyko*, 39 F.4th at 194 (affirming dismissal because any erroneous reliance on non-intervention decision was "inconsequential" where complaint failed to plead materiality without giving weight to that decision).

## C. Amicus's Additional Arguments On Materiality Are Meritless, Have Been Waived, And Are Inconsistent With Holt's Allegations

Amicus argues that the court reversibly erred by asking whether an alleged misrepresentation was material to the government's decision to pay, rather than to Carrier Defendants' decisions to pay commissions to MMA. *See* Amicus Br. at 15. This argument is meritless, contradicts the theory Holt pled and advanced below and on appeal, and is not properly before this Court.

---

[38] *See United States ex rel. Kraemer v. United Dairies, L.L.P.*, 82 F.4th 595, 606 (8th Cir. 2023) (noting favorably that "[a]t least two of our sister circuits have observed that the United States's refusal to intervene in a *qui tam* FCA case indicates the relator's case is weak"), *reh'g denied*, 2023 WL 7015733 (8th Cir. Oct. 25, 2023).

Appellate Case: 23-2564     Page: 45     Date Filed: 12/08/2023 Entry ID: 5342827

Amicus is wrong on the merits, because in determining materiality, "[w]hat matters is . . . *whether the defendant knowingly violated a requirement that the defendant knows is **material to the Government's payment decision**.*" *Escobar*, 579 U.S. at 181 (emphases added). While *Escobar* addresses an implied false certification theory of presentment under Section 3729(a)(1)(A)—like Holt's claims in the SAC—its analysis would apply even if Holt had pled a fraudulent inducement theory. In such a case, the Court would focus materiality on how a misrepresentation "influenced the *government's decision* to enter into its relationship with" MMA or another defendant. *Miller*, 840 F.3d at 504 (emphasis added). As the Third Circuit has explained: "Because the False Claims Act was passed to protect the federal treasury, and since the Government decides on payment, it is the Government's materiality decision that ultimately matters." *United States ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 492 (3d Cir. 2017) (citations omitted). It makes "little practical sense to give [non-government intermediaries'] materiality determinations dispositive weight." *Id.*

Amicus relies on *Garbe* for the proposition that misrepresentations material to a non-government intermediary's decision are actionable, but *Garbe* appears to address materiality for claims brought under Section 3729(a)(1)(B), which are based on making, using or causing the making or use of "a false record or statement material to a false or fraudulent claim." *See* 31 U.S.C. § 3729(a)(1)(B); *United*

35

*States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 638 (7th Cir. 2016) (framing materiality inquiry by quoting requirement that a false statement be "material to a false or fraudulent claim"). Holt pled no such claim here. But to the extent *Garbe* holds that materiality under Section 3729(a)(1)(A) can be shown through the decision of a non-government intermediary alone, it is inconsistent with *Escobar* and should not be followed.

Critically, were amicus's theory legally viable in another case, it would still fail as a basis for reversal here, because the SAC contradicts rather than pleads facts to support amicus's theory. Holt explicitly pled that the Carrier Defendants continued paying commissions to MMA even *after* being informed of MMA's purported wrongdoing. App. 79-82, 84-85; R. Doc. 27 at 58-61, 63-64 (SAC ¶¶ 246-47, 250-51, 281, 254-56, 260, 268, 281).[39] In other words, Holt pled that MMA's alleged misconduct was *immaterial* to the Carrier Defendants' payment decisions, so it would be a useless exercise to remand, as amicus requests, for the district court to address materiality from the vantage point of those Carrier Defendants' decisions.

While amicus's argument fails on the merits, the Court may affirm without addressing it, because it is one Holt herself has never pled or argued. *See Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021) ("Because Rivera did not

---

[39] *See Nargol*, 865 F.3d at 35 (noting FDA inaction despite actual knowledge of alleged wrongdoing makes it "not plausible that the conduct . . . constituted a material falsehood capable of proximately causing the payment of a claim").

Appellate Case: 23-2564     Page: 47     Date Filed: 12/08/2023 Entry ID: 5342827

raise this argument before the district court in opposition to [the] motion to dismiss, we consider it waived."); *Kamen*, 500 U.S. at 97 n.4. Rather, Holt expressly pled and later argued that various alleged forms of misconduct were material to the *government's* payment decision.[40] And in her opening brief, Holt argues only that materiality looks to "the government's decision"—not to a Carrier Defendant's decision(s).[41]

### D. Holt Has Abandoned Any Argument For Reversing Dismissal Of Counts IV and V

Holt argues nothing at all about the materiality of eligibility requirements for Extra Help or MORx or enrollment through an SEP and thus has abandoned any argument for reversing the court's dismissal of Counts IV and V of the SAC. *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 n.3 (8th Cir. 2013).

The Court can affirm dismissal of both counts on this basis alone.

---

[40] *See supra* note 8.

[41] Br. at 43 ("The law here [asks] . . . whether the Defendants' fraud materially influenced *the government's decision* to **enter into contracts** with the Defendants.") (italics added); *see also id.* at 40 (arguing the district court erred in concluding that "allegations of paying thousands of illegitimate commissions and related payments for Medicare Advantage enrollments was immaterial to the government").

Indeed, every case Holt cites for materiality states that the alleged misrepresentation must be material *to the government*. *See Miller*, 840 F.3d at 504; *Strock*, 982 F.3d at 61-62; *Care Alternatives*, 81 F.4th at 365; *Prather*, 892 F.3d at 831; *United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*, 34 F.4th 507, 516 (6th Cir. 2022); *Hendow*, 461 F.3d at 1174.

Appellate Case: 23-2564    Page: 48    Date Filed: 12/08/2023 Entry ID: 5342827

## IV. The District Court Correctly Determined That Holt Failed To Plead That MMA Presented Or Caused Presentment Of A False Claim

The Court should affirm because, among other fatal defects in the SAC, Holt did not allege that MMA presented (or caused to be presented) a false or fraudulent claim for payment, under Section 3729(a)(1)(A), which is the *only* FCA violation that Holt alleged against MMA. *See* App. 95, 100-02; R. Doc. 27 at 74, 79-82.[42]

Holt has neither pled representative examples of specific false claims that MMA presented or caused to be presented, nor has she pled "*particular* details of a scheme to submit false claims paired with *reliable* indicia that lead to a *strong* inference that the claims were actually submitted." *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 918 (8th Cir. 2014) (emphasis added) ("*Thayer I*").

### A. Holt Did Not Plead Any Examples Of MMA Presenting Or Causing Presentment Of Any False Claim

Holt alleged misconduct by MMA over roughly fifteen years, although she worked for MMA only in parts of years nine and ten. Holt still stopped short of pleading facts from which one could infer that MMA submitted or caused the

---

[42] Each Count against MMA claims violations of: (i) Section 3729(a)(1)(A), which imposes liability if one "knowingly presents, or causes to be presented, a false or fraudulent claim for payment," 31 U.S.C. § 3729(a)(1)(A) (2009); and (ii) former Section 3729(a)(1), which imposed liability if one "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1) (1986).

38

submission of any exemplar false claim, that is, a "request or demand . . . for money or property,"[43] which is the "the *sine qua non* of a False Claims Act violation." *United States ex rel. Benaissa v. Trinity Health*, 963 F.3d 733, 740 (8th Cir. 2020).

Nowhere does Holt identify a false MMA request or demand for payment. Below, Holt stated that the alleged MMA's "claims" were every application MMA submitted to the Carrier Defendants on behalf of future Medicare Advantage enrollees, which the Carrier Defendants in turn submitted to CMS for its purported payment of commissions.[44] On appeal, Holt does not identify MMA's "claims," except to say that they were made upon the Carrier Defendants rather than upon CMS. But Holt never alleged that MMA knowingly made a false request or demand for money from a Carrier Defendant. Holt does not argue otherwise here, and instead repeatedly states that MMA made "requests," "demands," or "claims," without identifying the thing requested or demanded, or otherwise identifying the contents of any request, demand, or claim, made to any Carrier Defendant.

The closest Holt comes to stating what she means by an MMA-made "claim" in her brief, beyond the unsupported tautology that MMA "sent in claims for

---

[43] 31 U.S.C. § 3729(b)(2).

[44] App. 44, 95-96, 100-102; R. Doc. 27 at 23, 74-75, 79-81 (SAC ¶¶ 118, 120, 341, 350-52, 378, 383, 386, 390, 396) (describing "MAPs submitted by MMA agents" as "false claims for payment of commissions" and repeatedly alleging that "MMA knowingly presented or caused to be presented applications for enrollment in MAPs").

Appellate Case: 23-2564    Page: 50    Date Filed: 12/08/2023 Entry ID: 5342827

commission payments,"[45] is to declare that "MMA . . . submitted applications for MA Plans" that "resulted in increased commission payments." Br. at 39. But what was the false request or demand in the applications? Holt does not say, and it would "strip all meaning from Rule 9(b)'s requirements of specificity" to *infer* a false request or demand from the mere existence of unidentified Medicare Advantage applications, enrollees, or payments. *See United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1165 (8th Cir. 2019) (quoting parenthetically *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005)) (cleaned up). If Holt maintains that MAP applications constitute false claims because MMA agents were not certified under proper testing conditions, or had obtained applications through allegedly impermissible marketing tactics, she fails to tie *any* application to any improperly certified agent or prohibited tactic. Her only allegations about particular agents state merely that they submitted applications, with no allegation that any application was obtained through a marketing violation or by an improperly certified agent. *See* App. 66-73; R. Doc. 27 at 45-52 (SAC ¶¶ 215-17).

Nor should the Court reverse dismissal on the purported basis that "the 'claims' at issue are *the Carrier Defendants'* yearly applications for CMS funds"— each Carrier Defendant's application (apparently from 2006 onwards)—because

---

[45] Holt's only supporting allegation is another conclusory one, that "MMA has caused thousands of claims to be presented to the government" by preventing agents from being properly certified. Br. at 39 (citing SAC ¶ 95).

Holt does not argue and did not plead that *MMA* knowingly caused any Carrier Defendant to submit a false application, in any year.  Br. at 36 (emphasis added).

### B. Holt Did Not Plead Particular Details Of A Scheme To Submit False Claims, With Reliable Indicia That Claims Were Submitted

To survive dismissal without pleading examples of false claims, a relator must allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that false claims were actually submitted.  *See Strubbe*, 915 F.3d at 1163.

Holt makes an argument similar to those this Court repeatedly has rejected, declaring that false claims must have been presented somehow, relying on general allegations that (i) every application was fraudulent due to MMA's purported marketing or agent-testing violations, and (ii) MMA and the Carrier Defendants were paid.  *See* Br. at 36, 40.  Holt did not allege facts showing her direct or indirect knowledge of the processes by which the Carrier Defendants bid for Medicare Advantage contracts, CMS pays Carrier Defendants, or how the Carrier Defendants pay MMA, nor does she otherwise allege any indicia from which the Court can draw a strong inference that false claims actually were submitted.

Drawing inferences from well-pled facts in Holt's favor, the alleged "particular details" of the scheme are that MMA encouraged or directed unidentified agents to violate marketing rules to secure applications, and improperly achieved certification for unqualified, unidentified agents.  From these vague premises, Holt

41

declares that every enrollment application MMA has submitted to a Carrier Defendant since 2006 was *necessarily* derived from violating these marketing or testing requirements,[46] arguing that there is no way the defendants could have been paid unless they had made false claims by submitting MMA-derived applications (to the Carrier Defendants or to CMS). *See* Br. at 36, 40.

Holt's allegations fare no better than those this Court repeatedly has rejected as insufficient to meet Rule 9(b). A relator cannot survive dismissal by baldly declaring that every payment resulted from a false claim, without alleging facts to support a strong inference that any such claims were actually submitted. *See Benaissa*, 963 F.3d at 741 (affirming dismissal where complaint alleged that defendant received significant Medicare payments, and had paid five individual physicians for referrals as kickbacks, meant every claim for those physicians' services was false claim); *Strubbe*, 915 F.3d at 1164-66 (holding there were no indicia of reliability where relators failed to detail billing practices or allege personal knowledge of the same, or of claims-submission process); *Joshi*, 441 F.3d at 557 (affirming dismissal where relator alleged a practice of submitting false claims over sixteen year-period, without reliable indicia that relator had knowledge of the same).

---

[46] Holt does not and cannot tie allegations of any scheme, or specific MAP application, to any then-existing rule or sub-regulatory guidance that MMA's conduct would have violated at the time. MMA overlooks, for purposes of this argument only, this particular defect in Holt's pleading.

42

*Thayer I* illustrates the boundary between scheme-based FCA theories that survive dismissal and those that fail like Holt's.[47] There, this Court allowed certain scheme-based claims to survive because the relator had alleged who instructed her to carry out schemes to bill Medicaid for excessive and/or already paid-for services, when these schemes occurred, the participating clinics, the methods by which the schemes were perpetrated, and importantly, pled her own knowledge of defendant's billing system and practices by alleging her access to defendant's system. *See* 765 F.3d at 919.

Holt's allegations are devoid of such reliable indicia, and are more akin to those claims for which this Court affirmed dismissal in *Thayer I*. There, the relator had failed to plead an alleged scheme to bill abortion services as "miscarriages," because she pled only that the defendant had directed patients to claim to hospitals that they had suffered miscarriages, without alleging knowledge of those hospitals' billing systems. *See id.* The Court likewise affirmed dismissal of a theory based on an alleged scheme to "upcode" services, because the relator had failed to allege the physicians and services involved in upcoding or when and how often upcoding occurred, and thus failed to plead even the "particular details of the scheme" to submit upcoded claims. *See id.* at 919-20.

---

[47] Holt cites a decision on a later remand in *Thayer*, wherein the parties had agreed that a particular species of claims had been presented. *See* Br. at 34.

Appellate Case: 23-2564    Page: 54    Date Filed: 12/08/2023 Entry ID: 5342827

Holt cites the Fourth Circuit's decision in *Boyko*, which does not help her. There, the court applied its analogue to a "scheme"-based presentment claim: a relator can survive dismissal by alleging "a pattern of conduct that would *necessarily* have led to submission of false claims to the government for payment." *Boyko*, 39 F.4th at 196 (quotation marks omitted). The relator in *Boyko* had pled that a defendant had directed physicians to sign medical charts of patients seen only by nurse practitioners, to obtain higher government reimbursement. *See id.* at 196.

The court nonetheless affirmed dismissal because the relator had failed to connect that misconduct to a government payment, such as by alleging how physicians followed the improper directive and signed charts for patients they had not seen, or how those signatures prompted a defendant's billing company to submit fraudulent invoices. *See id.* The court specifically rejected relator's argument that it would be "impossible to believe" that fraudulent billings were not submitted as "inherently speculative," explaining that Rule 9(b) "does not permit a [relator] merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments *must* have been submitted, were *likely* submitted or *should* have been submitted to the Government." *Id.* (quotation marks omitted). Holt does just that, by asking this Court to *assume* that any payment to any defendant *must* have been the product of presenting a false claim.

44

**C.** **An Indirect Presentment Theory Requires Alleging Presentment Of A False Request Or Demand For Money, Which Holt Has Not Done**

Holt and amicus argue, in different incorrect ways, that the district court dismissed the SAC by erroneously presuming that the FCA limits liability to those who *directly* request or demand payment from the government (rather than through third parties). Br. at 39-40; Amicus Br. at 10-11. The court's ruling was not based on a misunderstanding of presentment under FCA, but a correct understanding of how Holt alleged presentment here, specifically, how she failed to plead MMA's indirect presentment.

Holt alleged that MMA had presented or caused presentment of claims *to the United States*, through conclusory statements of law that, when corrected, revealed Holt had not pled a Section 3729(a)(1)(A) claim. Holt pled that every application for enrollment in Medicare Advantage was a knowingly false claim by MMA to the United States for a commission payment. The defendants and the court were thus required to correct Holt on how (i) MMA interacts with the Carrier Defendants and (ii) the Carrier Defendants interact with the government.

As the court explained, CMS pays a fixed amount to the Carrier Defendants for each Medicare Advantage member enrolled regardless of the services provided or how the member enrolled (through an agent or through the carrier directly). *See* App. 419; R. Doc. 101 at 10 (citing *United States ex rel. Gray v. UnitedHealthcare*

45

*Ins. Co.*, No. 15-cv-7137, 2018 WL 2933674, at *7 (N.D. Ill. June 12, 2018)). The Carrier Defendants themselves determine whether to pay commissions to MMA, and those Defendants also determine whether to include costs of past commissions in their annual bids to CMS, which then become a matter of negotiation between the Carrier Defendant and CMS for future contracts. *See* 42 C.F.R. §§ 422.254 (concerning bids), 422.256 (concerning negotiations), 422.2274(d) (concerning agent compensation); App. 412-14, 419-20; R. Doc. 101 at 3-5, 10-11 (discussing regulatory background).

The court thus determined that MMA-derived MAP applications, submitted by the Carrier Defendants to CMS, were not "claims for payment of commissions to CMS," as Holt had simply declared,[48] and thus that regardless of whether those applications were "presented or caused to be presented" to CMS by MMA, they were not claims. App. 420; R. Doc. 101 at 11.

Holt attempts to overcome this misunderstanding in her SAC by misplacing reliance on *Allison Engine*,[49] which concerned an FCA claim that Holt did not assert. In *Allison Engine*, the Court addressed pre-amendment Section 3729(a)(2) (post-amendment Section 3729(a)(1)(B)), which imposed liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false

_____

[48] App. 44; R. Doc. 27 at 23 (SAC ¶ 118).

[49] *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008).

Appellate Case: 23-2564     Page: 57     Date Filed: 12/08/2023 Entry ID: 5342827

or fraudulent claim paid or approved by the Government." Br. at 38 (emphasis omitted). Each of Holt's causes of action alleged violations of the Act's prohibition on presentment of a false claim, under Section 3729(a)(1)(A) and its predecessor—*nowhere* did Holt assert a claim under Section 3729(a)(1)(B). But even a hypothetical cause of action based on MMA submitting "a false record or statement to get a false or fraudulent claim paid or approved" (or based on current Section 3729(a)(1)(B)) would require particularized allegations that Holt has not made: an MMA false record or statement, the false claim that it advanced, and the connection between the two. *See Strubbe*, 915 F.3d at 1166 (citing among other cases *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 200 (4th Cir. 2018) (explaining that a relator asserting a claim under § 3729(a)(1)(B) "is still required to show that a false claim was submitted to the government")).

Holt and amicus both improperly fault the court for addressing and dismissing Holt's theory of presentment as she incorrectly pled it.

### D. Amicus Incorrectly Presumes That The District Court Erroneously Relied Upon Pre-Amendment Statutory Text

Amicus argues that the district court applied an incorrect, pre-amendment definition of a "claim" under the FCA and thus erred by dismissing all counts in the SAC for failure to plead presentment of a "claim" to the government. This is another argument raised only by amicus that should not be considered for reversal—Holt did

47

not raise this argument in her post-judgment motion and does not raise it here. Regardless, the argument is meritless.

The court's decision was not based upon an incorrect definition of an FCA "claim," but on how Holt attempted to plead presentment of one. "[A] district court is presumed to know the law,"[50] and amicus offers no good reason to depart from that presumption, because the court discussed and relied upon persuasive *post*-amendment authority in explaining why Holt had not alleged presentment of a false "claim." App. 419; R. Doc. 101 at 10 (citing *Gray*, 2018 WL 2933674 at *7, and *Benaissa*, 963 F.3d at 740). Ignoring the court's reliance on post-amendment presentment cases, amicus urges that a footnote in the court's introduction shows that it reversibly erred by relying on pre-amendment text requiring direct presentment to the government. Amicus Br. at 13 (citing App. 410 n.1; R. Doc. 101 at 1 n.1). Amicus also criticizes the court's statement, in its discussion, that "Counts I, III, IV, V, and VI must be dismissed because they fail to adequately plead presentment of a *claim* for payment by the *government*." App. 419; R. Doc. 101 at 10.[51] But each of those counts alleged that the named defendant(s) "presented or

---

[50] *Kraemer*, 82 F.4th at 607 (Colloton, J., concurring in the judgment).

[51] Amicus does not attack this Court's post-amendment statement of the very same proposition in *Benaissa*, which the district court quoted in the same paragraph. App. 419; R. Doc. 101 at 10 ("[T]he act of submitting a fraudulent claim to the government is the sine qua non of a False Claims Act violation." (quoting *Benaissa*, 963 F.3d at 740)).

caused to be presented false or fraudulent claims *to the United States*," excepting Count VI, which alleged "the United States" suffered unspecified damages "[b]y virtue of the false or fraudulent claims that [the Carrier] Defendants presented." App. 96, 100-01, 103-04; R. Doc. 27 at 75, 79-80, 82-82 (SAC ¶¶ 352, 374, 387, 400, 412) (emphasis added).

Leaving aside that Holt invoked the pre- and post-amendment FCA text in each Count, and alleged presentment only "to the United States," the court did not erroneously rely upon pre-amendment language in dismissing any post-amendment claims against MMA. The SAC's theory of presentment against all Defendants, even crediting Holt's *conclusory* allegations for argument's sake, was that every MMA application (somehow) constituted a request for a commission payment, that the Carrier Defendants then passed along to CMS for payment. That is, Holt pled direct presentment by the Carrier Defendants, and that MMA knowingly caused that presentment.[52]

Under Holt's theory, *someone* had to present a claim "to the United States," but her allegations of how that happened failed because they were premised on conclusory and incorrect statements of the Medicare Advantage application, contract-bidding, and payment processes under CMS's rules. Amicus notably does

---

[52] Amicus does not argue that Holt adequately pled direct presentment by MMA, that MMA *itself* "presented false or fraudulent claims to the United States." *E.g.*, App. 96; R. Doc 27 at 75 (SAC ¶ 352).

Appellate Case: 23-2564     Page: 60     Date Filed: 12/08/2023 Entry ID: 5342827

not attack the court's construction of the relevant rules and its refusal to accept Holt's incorrect legal allegations as fact, except to declare that it missed the mark by addressing Holt's presentment theory as she pled it: that defendants presented or caused presentment of false claims "to the United States."

The Seventh Circuit's decision in *Garbe* is not to the contrary, because it almost entirely concerned FCA *materiality* and, while it does discuss "presentment" generally, it does not discuss claims for a violation of current Section 3729(a)(1)(A) and in particular, it does not address a claim specifically pled on the basis that a defendant presented or caused presentment of a claim "to the United States." *See generally Garbe*.

## V. Additional Bases For Affirming Dismissal

The Court may affirm dismissal on any basis in the record, regardless of whether it was presented or ruled upon below. *See Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 933-34 (8th Cir. 2012).

### A. Holt Failed To Plead That MMA Proximately Caused Anything

As noted above, FCA liability requires pleading that a defendant's knowing misrepresentation proximately caused either the inducement of a contract (under which claims for payment were later submitted) or the payment of a claim.[53] Holt did not plead facts from which the Court could infer that any alleged MMA

---

[53] *See supra* note 11 and accompanying text.

50

misrepresentation proximately caused the payment of any false claim, or the inducement of any contract, and Holt plainly has not done so with particularity.

The Court may affirm dismissal on this independent basis.

### B. Holt Failed To Plead MMA's Scienter

The Court can affirm dismissal on the independent basis that Holt did not plausibly plead that MMA "knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Escobar*, 579 US at 181. While scienter, which can be shown through actual knowledge, deliberate ignorance, or recklessness,[54] is the only element of FCA liability that can be alleged generally, it must still be supported with well-pled facts. *See United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1011-12 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017).

Even assuming the incorrect premise that MAP applications are "claims" for payment, Holt must allege that MMA knowingly presented or caused *false* applications to be submitted. Holt fails entirely to identify *any* application that was procured through violating any purported requirement in existence at any particular time. Accordingly, she does not and cannot allege that MMA knew or recklessly disregarded the truth as to whether submitting any application constituted a false statement of compliance with any given requirement, at any time.

---

[54] *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023).

## VI. Holt Gives No Reason To Reverse The Denial Of Her One-Sentence Request To Amend Her Presentment-Based Claims

Holt alternatively seeks reversal of the denial of her one-sentence request for leave to file a Third Amended Complaint.[55]  But even through this appeal, Holt has never explained how she could cure the defects identified by the court in the SAC, which is fatal to her appeal of the court's denial of leave to amend and dismissal with prejudice.[56]

Holt argues nothing to disturb the district court's judgment that any amendment would be futile, because Holt does not argue that she could correct the defects found by the court.  Given her view of why leave should be granted to plead fraudulent inducement, she has specifically abandoned any request to re-plead the materiality of any allegedly false claims that MMA presented or caused to be presented.  *See* Br. at 50 (requesting remand to add a fraudulent inducement theory *if* the Court determines that the SAC pled materiality).  Nor does Holt argue that she could cure her failure to plead presentment of any false claims.

Because she makes no argument here for allowing her to cure the defects identified by the district court, the Court should affirm the denial of leave to amend.

Holt's appeal thus stands, and falls, on the SAC's allegations alone.

---

[55] MMA addresses Holt's apparent arguments to *add* a fraudulent inducement theory, in Part II.B.  This section addresses Holt's request to re-plead her claims as pled in the SAC and correct the defects upon which the court granted dismissal.

[56] *See Ambrosecchia*, 855 F.3d at 956.

52

## CONCLUSION

For the foregoing reasons, the Court should affirm.

Dated: December 8, 2023

Respectfully submitted,

**Polsinelli PC**

*/s/ Jessica M. Andrade*
Jessica M. Andrade (WSBA #39297)
1000 Second Avenue, Suite 3500
Seattle, WA 98104
Telephone: (206) 393-5400
Facsimile: (206) 393-5401
jessica.andrade@polsinelli.com

*/s/ E. Benton Keatley*
E. Benton Keatley (MO #69868)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
ebkeatley@polsinelli.com

***Attorneys for Medicare Medicaid Advisors, Inc. and Carefree Solutions USA Inc. n/k/a Medicare Medicaid Advisors USA, Inc.***

53

# INDEX OF CMS MARKETING GUIDELINES

1. CY 2019 Marketing Guidelines (Sept. 5, 2018),
   https://www.cms.gov/medicare/health-plans/managedcaremarketing/downloads/cy2019-medicare-communications-and-marketing-guidelines_updated-090518.pdf

2. CY 2018 Marketing Guidelines (July 20, 2017),
   https://www.cms.gov/medicare/health-plans/managedcaremarketing/downloads/cy-2018-medicare-marketing-guidelines_final072017.pdf

3. CY  2017 Marketing Guidelines (June 10, 2016),
   https://www.cms.gov/medicare/health-plans/managedcaremarketing/downloads/2017medicaremarketingguidelines2.pdf

4. CY 2016 Marketing Guidelines (July 2, 2015),
   https://www.cms.gov/medicare/health-plans/managedcaremarketing/downloads/2016-medicare-marketing-guidelines-updated.pdf

5. CY 2015 Marketing Guidelines (June 17, 2014),
   https://www.cms.gov/medicare/health-plans/managedcaremarketing/downloads/medicaremarketingguidelines061714withdate.zip

6. CY 2014 Marketing Guidelines (June 28, 2013),
   https://www.cms.gov/Medicare/Health-Plans/ManagedCareMarketing/Downloads/Medicare-Marketing-Guidelines-062813.zip

Please note that the links to both the CY 2015 and CY 2014 guidelines will download .zip files containing the guidelines, as direct links to the PDFs themselves were unavailable.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7) because this brief contains 12,734 words, excluding those parts of the brief that are exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), because it has been prepared in a proportionally-spaced typeface using the Microsoft Word for Microsoft 365 word processing program, in 14-point Times New Roman type style.

I further certify that this brief complies with 8th Cir. L.R. 28A(h) because it has been scanned for viruses and is virus-free.


*/s/ E. Benton Keatley*
E. Benton Keatley

Appellate Case: 23-2564    Page: 66    Date Filed: 12/08/2023 Entry ID: 5342827

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was electronically filed on the 8th day of December, 2023 with the United States Court of Appeals using the CM/ECF system, which will send notification of such filing to all parties requesting electronic service.

*/s/ E. Benton Keatley*
E. Benton Keatley

Appellate Case: 23-2564    Page: 67    Date Filed: 12/08/2023 Entry ID: 5342827